1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11

VANCE HILDERMAN, an individual;
HIGHRELY INC., a Delaware

12

corporation,

13

Plaintiffs,

vs.

14

15

ENEA TEKSCI, INC., dba ENEA
embedded technology,

16

Defendants.

17

AND RELATED COUNTERCLAIMS

18

CASE NO. 05cv1049 BTM(AJB)

**ORDER DENYING ENEA'S MOTION
FOR SUMMARY JUDGMENT ON
HILDERMAN'S BREACH OF
CONTRACT CLAIM**

19

20

     Defendant Enea TekSci, Inc. ("Enea") has filed a motion for summary judgment on

21

Vance Hilderman's second claim for breach of contract.  For the reasons discussed below,

22

Enea's motion is **DENIED**.

23

24

### I. BACKGROUND

25

     The factual background of this case was set forth in the Court's order filed on March

26

12, 2008, and need not be repeated here.  In that order, the Court denied without prejudice

27

Enea's motion for summary judgment on Hilderman's breach of contract claim.  The Court

28

explained that although Hilderman contended that he personally suffered damages from the

1    alleged breach of the Severance Agreement, Hilderman had not detailed exactly what

2    damages he was claiming.  The Court gave Enea leave to file a new motion for summary

3    judgment limited to the issue of Hilderman's contract damages and cautioned Hilderman to

4    specify each and every element of his claimed damages.

5

6                                **II.  DISCUSSION**

7            Pointing to Hilderman's Responses to Enea's First Set of Interrogatories, dated

8    December 5, 2005, Enea argues that Hilderman was not personally damaged by the alleged

9    breach of contract.  Responding to interrogatories regarding the amount of damages

10   Hilderman is claiming against Enea and how such damages were calculated, Hilderman

11   stated:  "Vance Hilderman's claims are identical to, based upon, and incorporate the

12   business damages accruing to HighRely, and Hilderman incorporates HighRely's answers

13   to this interrogatory."  (Enea's Ex. 2.)

14           Based on Hilderman's interrogatory responses, Hilderman seeks to recover damages

15   suffered by HighRely and did not personally suffer any damages.  However, in his opposition

16   to Enea's motion, Hilderman declares that he has suffered damages separate and apart from

17   HighRely. Specifically, Hilderman claims the following damages: (1) lost profits he would

18   have drawn under his profit-sharing agreement with HighRely (according to Hilderman, the

19   loss of the Hospira contract resulted in HighRely losing $1,000,000 in profit); (2) a loan in the

20   amount of $70,000 to HighRely which remains unpaid because HighRely does not have the

21   financial assets to repay the loan; (3) an annual salary of $95,000 for his services to

22   HighRely from 2005 to 2007 (Hilderman states he was budgeted to receive a $95,000 annual

23   salary for his services as President of HighRely but was never paid for the time he served

24   as President and was forced to step down as President in late 2005 as a result of "Ms.

25   Walker's disparagement of my reputation with HighRely and the avionics certification

26   industry."); (4) $79,333.00 in unpaid rent (HighRely is a tenant in an office building which is

27   owned by MHB Properties; Hilderman owns one-third of MHB Properties); (5) attorney's fees

28   that are recoverable under the terms of the Severance Agreement.

1      Enea contends that Hilderman should be bound to his interrogatory responses. Under

2  the "sham affidavit" rule, a party cannot create a triable issue of fact by introducing a sham

3  affidavit that contradicts his prior deposition testimony or interrogatory responses. School

4  District No. 1J, Multnomah County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1264 (9th Cir.

5  1993). However, this rule should be applied with caution. Kennedy v. Allied Mutual Ins. Co.,

6  952 F.2d 262, 266-67 (9th Cir. 1991).  This rule applies to "'sham' testimony that flatly

7  contradicts earlier testimony in an attempt to 'create' an issue of fact and avoid summary

8  judgment." Id. at 267.  "Therefore, before applying [the rule], the district court must make a

9  factual determination that the contradiction was actually a 'sham.'" Id.

10      Although Hilderman's declaration contradicts his earlier interrogatory responses, the

11  Court does not find that the declaration is a "sham affidavit."  Hilderman's contention that he

12  has personal financial interests in relation to HighRely is not new.  During his deposition on

13  May 15, 2007, Hilderman insisted that he had a financial interest in HighRely and had been

14  personally damaged by Enea's actions.  (Hilderman Dep. (Ex. C to Lucio Decl.), 31:11-15,

15  18-19.)  Hilderman explained that he was a lender to HighRely and was still owed money on

16  the loans.  (Hilderman Dep., 32:25-33:1.)  He also explained that HighRely was a tenant on

17  property that he co-owned.  (Hilderman Dep., 33:4.)  When asked whether he had any other

18  financial interests in HighRely, Hilderman said, "No." (Hilderman Dep., 33:21-22.) Hilderman

19  did not discuss a profit-sharing agreement.  However, he may have believed that he had

20  covered the profit-sharing agreement by generally referring to his financial interest in

21  HighRely.  He also did not mention that he was to receive a salary for serving as President

22  of HighRely.  However, he did state that he served as President of HighRely.  (Hilderman

23  Dep. 32:17-18.)  Although Enea's counsel asked Hilderman if he was paid as an employee,

24  Enea's counsel never asked if the office of President was salaried.  (Hilderman Dep., 32:21-

25  22.)

26      Because the Court does not find that Hilderman's declaration is a "sham affidavit," the

27  Court turns to the question of whether Hilderman has raised a triable issue regarding the

28  existence of breach of contract damages.  Generally, the measure of damages for breach

05cv1049BTM(AJB)

1    of contract is "the amount which will compensate the party aggrieved for all the detriment

2    proximately caused thereby, or which, in the ordinary course of things, would be likely to

3    result therefrom."  Civ. Code § 3300.  The test for causation is whether the breach was a

4    substantial factor in causing the damages.  U.S. Ecology, Inc. v. State, 129 Cal. App. 4th

5    887, 909 (2005).  "The term 'substantial factor' has no precise definition, but 'it seems to be

6    something which is more than a slight, trivial, negligible, or theoretical factor in producing a

7    particular result.'" Id. (quoting Espinosa v. Little Co. of Mary Hospital, 31 Cal. App. 4th 1304,

8    1314 (1995).   In addition, "[c]ontract damages are generally limited to those within

9    contemplation of the parties when the contract was entered into or at least reasonably

10   foreseeable by them at that time; consequential damages beyond the expectation of the

11   parties are not recoverable." Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th

12   503, 515 (1994).

13        The Court finds that there is a triable issue as to whether Hilderman may recover

14   damages as a result of Enea's alleged breach of the Severance Agreement.  According to

15   Hilderman's evidence, Enea's interference with the Hospira contract resulted in a huge

16   financial loss to HighRely.  HighRely was unable to earn any profits and did not have the

17   funds to repay the loan from Hilderman, pay rent, or pay Hilderman's salary.  In addition,

18   Hilderman was deprived of payments under the profit-sharing agreement.  Because the

19   Hospira contract was a major contract and was projected to bring in over $1,000,000 in profit

20   (Hilderman Decl. ¶ 12), the loss of this contract arguably was a substantial factor in

21   HighRely's financial condition and inability to make payments to Hilderman.  Furthermore,

22   it was arguably foreseeable that Hilderman would have made financial outlays for the benefit

23   of HighRely and would suffer financial loss if HighRely was prevented from soliciting

24   customers of Enea after the initial six-month period. [1]

25

26        [1]   To the extent the Court relies on Hilderman's declaration, the Court overrules
     Enea's evidentiary objections.  Enea objects that Hilderman's statements regarding his
     financial loss are inadmissible hearsay, lack documentary proof, and are speculative and/or
27   irrelevant.  The hearsay objections are overruled because, for the most part, it appears that
     Hilderman has personal knowledge of the facts stated.  Furthermore, with respect to Enea's
28   hearsay and documentary proof objections, at the summary judgment stage, we focus on the
     admissibility of the evidence's contents, not the admissibility of the evidence's form.  Fraser

                                              4                                   05cv1049BTM(AJB)

1       Therefore, the Court denies Enea's motion for summary judgment on Hilderman's

2 breach of contract claim. **However, the Court cautions Hilderman that he is under a**

3 **continuing duty to supplement his discovery responses. Fed. R. Civ. P. 26(e)(1). To**

4 **the extent Hilderman has failed to supplement his discovery responses regarding his**

5 **breach of contract damages, Hilderman must do so within 20 days of the entry of this**

6 **order.** If Hilderman fails to do so, he will be barred from presenting this evidence at trial.

7

8                                              **III.  CONCLUSION**

9       For the reasons discussed above, Enea's motion for summary judgment on

10 Hilderman's second claim for breach of contract is **DENIED**.

11

12 **IT IS SO ORDERED.**

13

14 DATED:  June 2, 2008

15

16                               Honorable Barry Ted Moskowitz
                              United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28 v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  The evidence is not speculative, for the reasons discussed above, and is relevant.