**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VANCE HILDERMAN, an individual; HIGH RELY INC., a Delaware corporation,<br><br>　　　　　　　　　　　Plaintiffs,<br>v.<br><br>ENEA TEKSCI, INC., dba ENEA embedded technology, a Washington corporation,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 05cv1049 BTM(AJB)<br><br>**ORDER GRANTING MOTION IN LIMINE TO EXCLUDE EXPERT OPINION AND REPORT; DENYING AS MOOT MOTION IN LIMINE TO LIMIT ENEA'S TRADE SECRET EVIDENCE AND ARGUMENT** |
| ENEA TEKSCI, INC., dba ENEA embedded technology, a Washington corporation,<br><br>　　　　Counterclaimant and<br>　　　　Third-Party Plaintiffs.<br>v.<br><br>VANCE HILDERMAN, an individual and resident of California; and HIGHRELY, INC., a Delaware corporation,<br><br>　　　　　　　Counterdefendants,<br>and<br><br>MOHAMMED TURAJ (TONY) BAGHAI and LEILA HOSSEINIZADEH, husband and wife and residents of Arizona,<br><br>　　　　　　　Third-Party Defendants. | |

　　　　Counter-Defendants Vance Hilderman, HighRely, Inc., and Tony Baghai have filed a motion to exclude the expert opinion and report of Nicholas L. Feakins, CPA, as they relate to Enea Teksci, Inc.'s damages.  On February 1 and 2, 2010, the Court held an evidentiary

hearing during which Mr. Feakins testified as to his proposed expert opinion.  For the reasons discussed below, Counter-Defendants' motion is **GRANTED**.

### I. STANDARD

Federal Rule of Evidence 702 permits expert testimony "if (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case." Under Rule 702, expert testimony must be both relevant and reliable.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999).

The trial court must act as a "gatekeeper" to exclude expert testimony that does not meet Rule 702's reliability standards.  Kumho Tire, 526 U.S. at 147-48.  The inquiry under Rule 702 is a "flexible" one, and the district court has "the discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case." Id. at 158.

### II. DISCUSSION

Counter-Defendants contend that Feakins' expert opinion regarding Enea's damages should be excluded because it is unreliable and speculative.  Based on Feakins' testimony during the evidentiary hearing and his written report dated June 29, 2007, the Court agrees that Feakins' expert opinion fails to satisfy Federal Rule of Evidence 702's reliability standard.

Enea seeks damages for misappropriation of trade secrets, breach of fiduciary duty (Baghai), aiding and abetting breach of fiduciary duty (Hilderman), breach of contract (Baghai), and breach of severance agreement (Hilderman).  In his report (Ex. A)[1], Feakins

---

[1] The exhibits referenced herein were introduced into evidence at the evidentiary hearing for purposes of the hearing only.

determined Enea's damages based on an unjust enrichment theory.[2]  Feakins did not conduct an analysis or render an opinion regarding (1) any actual losses suffered by Enea as a result of Counter-Defendants' alleged conduct; or (2) any profit derived by Counter-Defendants as a result of obtaining clients, employees, or contracts as a result of the alleged misappropriation of trade secret or confidential information.  Instead, Feakins attempted to ascertain the value of the intangible assets allegedly misappropriated by Counter-Defendants.

Feakins concluded that the value of the trade secrets allegedly misappropriated by Counter-Defendants is $13,550.362.  Feakins reached this figure by relying on the amount Enea AB paid for TekSci, Inc.'s "Goodwill" in February, 2000.  Feakins reasoned that this transaction was an arms-length transaction that was indicative of the fair-market value of the intangible assets at issue.  The amount of the purchase price allocated to "Goodwill" was $18,232.457.  Feakins reduced this number by 25.7% to account for a decline in earnings in the years prior to March, 2005.

Feakins' opinion is unreliable because it rests on a number of unfounded assumptions. Most significantly, Feakins assigns the entire "Goodwill" value of $13,550.362 to the trade secrets allegedly misappropriated by Counter-Defendants.  The trade secrets at issue at the time of Feakins' report were: (1) a list of Enea employee internal and private e-mail addresses; (2) sixteen customers and potential customers obtained by HighRely; and (3) DO178B Critical Processes and Checklists. (Ex. F, Tab A.)  (As a result of subsequent rulings by the Court, the DO178B Critical Processes and Checklists and Boeing, one of the identified customers/potential customers, are no longer claimed as trade secrets.  Enea has

---

[2] California's Uniform Trade Secret Act provides that a plaintiff "may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss." Cal. Civ. Code § 3426.3. Similarly, when an employee breaches his duty of loyalty, the employer's damages can include the value of any material benefit received by the employee. Restatement (Third) of Agency § 8.01; <u>Eckard Brades, Inc. v. Riley</u>, 338 F.3d 1082 (9th Cir. 2003). In situations where a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss (or any loss at all), if the enrichment of the defendant would be unjust, the defendant may be under a duty to give the plaintiff the amount by which he has been enriched. Restatement (First) of Restitution § 1, Comment e. <u>See also</u> <u>Unilogic, Inc. v. Burroughs Corp.</u>, 10 Cal. App. 4th 612, 627-28 (1993).

also clarified that it is claiming the training manual "Enea Teksci Understanding DO254" as a misappropriated trade secret).

At the evidentiary hearing, Feakins explained that since TekSci was a "service" business, TekSci's customer list and employee list constituted the "bulk" of TekSci's general intangibles. However, Feakins has no basis in fact for this conclusion. Feakins did not have any information regarding if, and if so, how, the parties to the transaction allocated the "Goodwill" value to specific categories of intangible assets. All Feakins knew was that the purchase price allocated to "Goodwill" was $18,232.457.

General intangibles can include numerous items, such as those listed in Exhibit B ("Listing of Intangible Assets Commonly Subject to Appraisal and Economic Analysis," from Robert F. Reilly and Robert P. Schweihs, Valuing Intangible Assets 65 (McGraw-Hill 1999)). The Court went over this list with Feakins, who conceded that the general intangibles in this case probably included internally developed good will (reputation in the community), going-concern value, customer relationships, and a trained and assembled workforce. Indeed, Feakins admitted that a trained and assembled workforce would be worth more than a list of employee e-mails and that there was a "great deal of value" in it. Feakins could not, however, say how much of the $18,232,457 was attributable to the trained and assembled workforce, internally developed good will, or any other category of intangible assets. Feakins did not have enough knowledge of TekSci to form an opinion as to whether the "Goodwill" included other categories of intangible assets, such as marketing and promotional materials or preexisting contracts.

Absent knowledge of how much of the $18,232,457 should be allocated to significant intangible assets such as a trained and assembled workforce, internally developed good-will, going-concern value, and customer relationships (which is distinct from a customer list), Feakins simply has no basis for concluding that the entire "Goodwill" value is attributable to the value of the customer list and the list of employee e-mails. Likewise, Feakins' opinion that the value of TekSci's general intangibles minus the employee e-mail list and customer list is "negligible," is not based on facts or evidence.

1   Furthermore, it appears that Feakins misunderstands the scope of Enea's trade secret
2   claim. Enea's claimed trade secrets are a list of employee e-mail addresses and fifteen
3   specific customers (in addition to the DO254 training manual). Enea's trade secret claim
4   does not encompass the employee identities, the employment relationship between the
5   employees and Enea, or the customer relationships with Enea. It seems that Feakins
6   erroneously equated the value of the e-mail list and customer list with the value of Enea's
7   customer and employee relationships.[3] Although knowledge of employee e-mail addresses
8   and the identity of clients may *assist* a competitor in disrupting employment relationships and
9   customer relationships, the value of the e-mail list and the customer list is not equal to the
10  value of all of Enea's customer and employee relationships.[4] Indeed, other than Baghai,
11  Feakins did not have knowledge of any employee leaving Enea as a result of Counter-
12  Defendant's alleged misconduct. Similarly, Feakins did not have knowledge of any clients
13  or contracts obtained by Counter-Defendants to the detriment of Enea.
14  Feakins' opinion as to Enea's unjust enrichment damages is not based on sufficient
15  facts or data and is entirely speculative. Accordingly, the Court grants Counter-Defendants'
16  motion to exclude his expert opinion and report.
17  ///
18  ///
19  ///
20  ///
21  ///

---

[3] Feakins' report explained: "Since it appears that the activities engaged in by Hilderman and Baghai were so extensive that *one can assume that they misappropriated everything of value*, the value of the misappropriated assets would be the amount the Enea AB was willing to pay for them in an arm's-length transaction . . . ."

[4] The Court does not suggest that the customer list and employee e-mail list have no value. One method of measuring the benefit to Counter-Defendants of the allegedly misappropriated customer list and employee e-mail list would be the amount it would have cost Counter-Defendants to gather this information itself. See Sonoco Products Co. v. Johnson, 23 P.3d 1287, 1288 (Colo. Ct. App. 2001) (plaintiff's expert testified as to "cost of capital" damages – i.e., what it would have cost the defendant to finance the development of the misappropriated information itself.)

### III. CONCLUSION

For the reasons discussed above, Counter-Defendants' motion to exclude the expert opinion and report of Nicholas L. Feakins, CPA, as they relate to Enea Teksci, Inc.'s damages [Doc. # 142], is **GRANTED**.

In addition, Counter-Defendants' motion to limit trade secret evidence and argument [Doc. # 140] is **DENIED AS MOOT** in light of Enea's supplemental trade secret disclosure and Counter-Defendants' lack of objections thereto.

**IT IS SO ORDERED.**

DATED:  February 10, 2010

*[signature]*

Honorable Barry Ted Moskowitz
United States District Judge